SEAWELL et al. v. BERRY et al., (five cases.)

(Circuit Court, S. D. Ohio, W. D. May 4, 1893.)

Nos. 2,399, 2,402, 2,404, 2,405, 2,410.

1. HUSBAND AND WIFE—PROPERTY RIGHTS—DISABILITIES OF COVERTURE—PARTITION.

The owner of an undivided interest in Ohio lands was entirely incapable, while under the disabilities of coverture, of making a valid voluntary partition in the years 1821–24.

2. SAME—PARTITION OF WIFE'S LANDS BY HUSBAND.

In Ohio a husband was competent, in 1821–24, to make partition of his wife's real estate, which was binding on the inheritance during the continuance of his estate by the curtesy, but the right which he or his grantee acquired by the proceeding did not extinguish the right of the wife which survived to her or her heirs.

3. SAME—LIMITATIONS—RUNNING OF STATUTE.

Where a husband made partition of his wife's land, the running of the statute of limitations against her heirs, as to the lands not partitioned to her, did not begin at the date of her death, but was suspended during the continuance of the husband's estate by the curtesy.

At Law. Suits in ejectment by J. Hairston Seawell and others against Mehale Berry and others. General verdicts for defendants, and special findings relating to a partition. Plaintiffs move to set aside the general verdicts and special findings, and for judgment. Motions granted.

Matthews & Cleveland, for plaintiffs.
Gardner & Jones, for defendants.

SAGE, District Judge. Five cases, brought by the same plaintiffs against different defendants, but involving substantially the same questions of fact and of law, were consolidated for trial, under section 921, Rev. St. Insurance Co. v. Hillmon, 145 U. S. 285, 12 Sup. Ct. Rep. 909. The jury returned a general verdict for the defendants in each case. In accordance with a provision of section 5201 of the Revised Statutes of Ohio, they made written findings upon particular questions of fact. These findings were: First. That the original plaintiffs were the descendants of Margaret Ann Munford, (afterwards by marriage Margaret Sinclair,) who was a daughter of Robert Munford, who was a son and heir at law of William Green Munford. The present plaintiffs, with the exception of Seawell, who is a grantee, are, it is admitted, the descendants and heirs at law of the original plaintiffs. Second. That Margaret Ann Munford inherited from her father, Robert Munford, with her brothers Samuel and Robert Munford, one undivided one-third of the land described in the several petitions; and that subsequently, by the death of her brothers unmarried and without issue, she became vested with the entire title to said undivided one-third of said lands. Third. That a voluntary parol partition was made between the years 1821 and 1824, by and between the heirs and legal representatives of said William Green Munford, of the lands described in the original land warrants issued by the government of the United States in their favor as such heirs, including the lands in the petitions herein described; and, fourth, that the parties thereto respectively then took possession in severalty of the portions of said lands thereby assigned to them, and that they and their grantees have since that time continuously and exclusively so occupied said lands. Fifth. That under said partition the lands in the petitions herein described were assigned to Robert Munford, Ann Munford, and Stanhope H. Munford, and that the defendants hold and claim under them, and under Edward Stubblefield. Sixth. That the patents for said lands were issued to the heirs and legal representatives of William Green Munford in the years 1821 and 1822; that Margaret Ann Munford married July 4, 1819, at the age of 19, and died September 13, 1837, leaving children surviving her; that her husband was John Sinclair, and that he died in August, 1875. The surveys for which the patents were issued were seven in number, being respectively for 1,500, 1,300, 1,299⅔, 437, 410, 120, and 100 acres. The jury found: Seventh. That in said partition the 1,300-acre survey was assigned to Margaret Ann Sinclair and her husband, John Sinclair, "and a portion of other surveys to heirs of William Green Munford; and some of the tracts we do not know." The plaintiffs now move to set aside the general verdicts, for the reason that they are not sustained by the evidence, and that they are contrary to the charge of the court; and for judgment in their favor upon the special verdicts.

From the undisputed evidence it appears that these patents were issued on account of services rendered by William Green Munford as an officer of the United States army in the Revolu-

tionary War, and that the plaintiffs, as descendants and heirs at law of Margaret Ann Munford, who was his granddaughter, were the owners of and entitled to recover the possession of one undivided one-third of the lands described in the several petitions, unless there was a valid partition, as claimed by defendants; it being an undisputed fact that the defendants had acquired the other two-thirds of said lands by deed from Edward Stubblefield. The jury were instructed in the charge of the court to return their general verdict without reference to the alleged parol partition. They disregarded this instruction, and, finding that there was a parol partition, evidently based their general verdict upon that finding. The case turns now upon the decision of the question whether the evidence sustains the finding that there was a parol partition, and, if there was, whether it is sufficient to defeat the plaintiffs' actions. William Green Munford was the father of six children, of whom only three—Robert, John, and Mary—survived him, the others having died unmarried and intestate. Robert married Margaret Wardrope, and Mary married Edward Stubblefield. Robert had three children,—Samuel, Robert, and Margaret Ann. Samuel and Robert died unmarried and intestate in the lifetime of Margaret Ann, who married John Sinclair. John Munford had three children,—Robert, Stanhope, and Ann. The children of Mary are unknown. On the 8th of September, 1809, the United States issued in favor of the representatives of William Green Munford a land warrant directed to the principal surveyor of the land set apart for the officers and soldiers of the commonwealth of Virginia, for 6,666⅔ acres of land, by virtue of which Margaret Ann Munford, the daughter of Robert Munford, was entitled to one-third; Robert, Stanhope, and Ann, children of John Munford, one-third; and Mary Stubblefield, daughter of William Green Munford, the remaining third. On this warrant appears an assignment from Mary Stubblefield to Edward Stubblefield, and on November 23, 1809, an assignment from Edward Stubblefield to Duncan McArthur, of 1,500 acres. There appears also, under date March 18, 1822, an assignment from Robert, Stanhope, and Ann, children of John Munford, to Duncan McArthur, of 583 acres. Patents founded on this land warrant were issued as follows:

No. 6,538, for 1,300 acres, Nov. 14, 1822, to heirs and rep. Wm. G. Munford.
6,538, 1,500 acres, Aug. 1, 1821,    "    "    "    "
9,901 & 10,780, 1,299⅔ a., Nov. 14, 1822,    "    "    "    "
6,538, 437 acres, Nov. 14, 1822,    "    "    "    "
6,538, 100 acres,    "    "    "    "    "    "
6,538, for 410 acres, Nov. 14, 1822,    "    "    "    "
6,538, for 120 acres,    "    "    "    "    "

—Being a total of 5,166 acres to the heirs and legal representatives of William Green Munford. The remaining 1,500 acres were patented at various times between November 20, 1822, and August 1, 1836, to Duncan McArthur.

The original patent, dated August 1, 1821, for the 1,500-acre survey, is indorsed as follows: "We, the undersigned, heirs and legal representatives of William Green Munford, hereby assign our interest in the within patent to Robert W. Munford." This

is signed Stanhope H. **Munford, John** Sinclair, Margaret W. Munford, Margaret Ann Sinclair. Between the signatures of Stanhope H. Munford and John Sinclair there is a space for another signature, but if any was written there it has been obliterated by time. This assignment is without date, and there is no evidence that any consideration was paid for it. Who Robert W. Munford was is not shown. So far as the evidence discloses, the only Robert Munford then living who was an heir and legal representative of William Green Munford, was Robert, son of John Munford, and he is spoken of in four deeds,—three dated in June, 1823, by Robert H. Munford and others to Edward Stubblefield, and the other dated February 20, 1843, by Robert H. Munford and others to John Sinclair. No facts appear from which it may be inferred that Robert W. and Robert Munford were the same person. Stanhope H. was the son of John Munford. Margaret Ann Sinclair, as has already been stated, was the daughter of Robert Munford, (who was the son of William Green Munford,) and the wife of John Sinclair. Margaret W. Munford was the widow of Robert Munford. This assignment is the foundation of the claim that there was a parol partition between the heirs of John Munford and the heirs of Robert Munford, whereby the heirs of John Munford took the 1,500-acre survey, and the heirs of Robert Munford the 1,300-acre survey. That the 1,300-acre survey was embraced in the partition is evidenced, it is contended, by a deed dated May 1, 1824, made by John Sinclair and Margaret Ann, his wife, and Margaret W. Munford, to Solomon Salmon, whereby they convey the entire survey by general warranty deed in fee simple; and it is further contended that Edward Stubblefield, assignee of Mary Stubblefield, the other heir, got the 120, 410, and the 100 acre surveys. Two deeds, made on the 25th of June, 1823, and one deed made on the 27th of June in the same year, by Robert Munford and Mary, his wife, and Stanhope and Nancy Munford, and Margaret Munford, John Sinclair, and Margaret, his wife, to Edward Stubblefield, are relied upon to establish this contention. The names appear as above in the granting clauses of those deeds. The signatures are Robert H. Munford, and Ann Munford, as the wife of Stanhope R., instead of Nancy. "Nancy," however, is a diminutive of "Ann." The deeds are all quitclaims of the right, title, and interest of the grantors to the surveys named. They contain no covenants whatever. It is a fair inference that Robert H. Munford, as the name appears in the signature, was the same, as Robert Munford, son of John Munford, and grandson of William Green Munford. These items of evidence make up the case of the defendants in support of their claim that there was a parol partition. As to the assignment of the original patent for the 1,500-acre survey, if it was one of the steps in the execution of a parol partition, it is claimed for the plaintiffs that it should have been from Margaret W. Munford, widow of Robert Munford, and John Sinclair, and Margaret Ann, his wife, who inherited the interest of Robert Munford, to Robert, Stanhope, and Ann Munford, who inherited the interest of John Munford, whereas it is not only from

the three former, but also from Stanhope Munford to a Robert W. Munford, whose name does not appear anywhere in the roll of descendants of William Green Munford.

The consideration expressed in the deeds above referred to, made in June, 1823, was that Stubblefield, the grantee, was entitled to a certain proportion of the land warrant aforesaid, granted to the heirs and legal representatives of William Green Munford, "and we, the said Munfords and Sinclairs, acknowledge the said title." The execution of those deeds left the title to the undivided two-thirds of the 1,300 acre, the 1,299⅔ acre, and the 437 acre surveys in the heirs of Robert Munford, who were entitled to one undivided one-third, and the heirs of John Munford, who were entitled to one undivided one-third. This conclusion is reached by recognizing the indorsement on the original patent as an assignment of the interest of Stanhope H. Munford, Margaret Ann Sinclair, and Margaret W. Munford in the 1,500-acre survey to Robert W. Munford. The assignment on the warrant by Mary Stubblefield to Edward Stubblefield conveyed to him only the equitable title of her one-third interest in the entire quantity of land embraced in all the surveys. The execution of the deeds above referred to in June, 1823, conveyed to him the legal title of the other two-thirds of the 120, the 140, and the 100 acre surveys, containing altogether 630 acres. Now, let us see how the 1,500, 1,300, 1,299⅔, and the 437 acre surveys were disposed of. The conveyance of the 1,300-acre survey to Solomon Salmon by deed of March 1, 1824, has already been referred to. On the 23d of March, 1822, six months before the patents were issued by the government (November 14, 1822) for the 1,300, 1,299⅔, 437, 410, 120, and 100 acre surveys, Robert Stanhope and Ann Munford deeded the 1,500-acre survey to Edward Stubblefield; but in 1841 John Sinclair paid to Robert and Ann $1,000—$500 each— for all their right, title, and interest in and to all the lands undisposed of in the state of Ohio, "wherever situated, or in whatever county or counties they may be, to which they are entitled, and which have not heretofore been disposed of and conveyed by them;" and on the 15th of April, 1824, Stanhope made a similar conveyance to John Sinclair. Those deeds contain the following recital:

"And they, the said Robert H. and Ann Munford, (Stanhope,) having heretofore disposed of and conveyed their interest in a portion of said lands, but a portion thereof, to which they are entitled, still remains undisposed of and unconveyed by them."

When those deeds were made, the lands undisposed of by Robert, Stanhope, and Ann were their interest in the 1,300, the 437, and the 1,299⅔ acre surveys. As has already been shown, they had disposed of their interest in the 1,500, 410, 120, and the 100 acre surveys. At common law, voluntary partitions between joint tenants were not valid unless made by deed, excepting where the estate was for years only, but they could be made between tenants in common by parol, provided they were executed in severalty, with livery

of seisin. Freem. Coten. § 396. It was very early decided that estates in joint tenancy do not exist in Ohio. Sergeant v. Steinberger, 2 Ohio, 306. There has been a conflict of authority upon the question whether an oral partition can be recognized as valid under the statute of frauds. But even under the authorities denying the validity of such partitions it has been held that parol evidence may be sufficient to indicate that a valid partition had been made in cases where there was long-continued possession in severalty. Freem. Coten. § 397 et seq. In Piatt v. Hubbell, 5 Ohio, 245, decided in 1831, it appeared that an equal partition was in fact made between the parties in 1814, and that all the adult parties took possession of their respective shares, and had held them in severalty, and built upon and improved them on the faith of its validity. The court, sitting in chancery, refused, even as to parties who were minors when it was made, to disturb a partition in which there had been so long acquiescence accompanied by such acts of confirmation. This seems to have been a plain and logical application of the doctrine of part performance, which would avail also in an action at law, especially if the proof was of long-continued possession. The reason for the purchase in 1841 by John Sinclair from Robert and Ann Munford of their remaining title and interest to all lands in the state of Ohio is quite apparent. Margaret Ann Sinclair, and John Sinclair, her husband, by their deed of conveyance of the 1,300-acre survey to Solomon Salmon, conveyed in law only a third interest, but the conveyance was in terms of the entire title, with a covenant of warranty. It is easy to see that the purchase from Robert and Ann, which inured under the warranty to the benefit of Solomon Salmon and his grantees, was to protect Margaret Ann and John Sinclair against liability under their warranty. No deeds of conveyance of any part of the 1,299⅔-acre survey have been shown, and there is no evidence indicating that there has been any transfer of the title to that survey. After the deeds of 1841 and 1842, it belonged one-third to the representatives of Margaret Ann Sinclair, and one-third to her husband, John Sinclair. So, also, one-third of the 437-acre survey belonged to the representatives of Margaret Sinclair, and one-third, after the deeds of 1841 and 1842, to John Sinclair. The 1,500-acre survey belonged two-thirds to Edward Stubblefield, by virtue of the deed from Robert, Stanhope, and Ann to him, and of the assignment of the warrant by Mary Stubblefield; but the other third remained in Margaret Ann Sinclair, and was never deeded by her. This is the survey which includes the lands involved in these actions. No interest in this survey passed under the deeds of 1841 and 1842 from Robert, Stanhope, and Ann Munford to John Sinclair, because they had theretofore, to wit, in 1822, conveyed their interest in it to Edward Stubblefield. The only evidence, therefore, that bears on the question of partition is the fact that in 1822 and 1823 the heirs of Robert Munford deeded the 1,300-acre survey, and the heirs of John Munford the 1,500-acre survey; but the facts above referred to, and the subsequent purchase by John Sinclair of the interest of the heirs of Robert Munford in the 1,300-acre survey, and the recitals in the

deeds of those heirs, make it clear that the finding that there was a partition is not supported by the evidence.

There is another objection which is fatal to the validity of the partition claimed, even if it was in fact made. If made at all, it was between the years 1821 and 1824, as found by the jury, and as established by the dates appearing in evidence. But Margaret Ann Munford was married at the age of 19, on the 4th of July, 1819, and died September 13, 1837. See the sixth special finding by the jury. She was, at the date of the alleged partition, under the disabilities of coverture, entirely incapable of making a valid voluntary partition. To overcome this objection, it is contended for the defendants that her husband could make the partition. In support of this contention, and of the further proposition that a voluntary partition may be made of the wife's lands by the husband, which will, if equal, bind the inheritance, Foster v. Dugan, 8 Ohio, 87, 106, is cited. There the husband and wife joined with other cotenants in a petition for partition under the statute of 1801. Before any proceedings, the wife died. The court held that during her life her husband was a necessary party to represent her interest, and that by her death his estate by the curtesy continued him the tenant of the freehold, without determining his right or interest. The commissioners appointed to make partition reported an appraisal of the land, with a finding that no division could be made without impairing its value, and, the husband and a cotenant who was a party to the proceeding having elected to take the land at its appraised value, the sheriff, under authority conferred by the statute, conveyed it to them. The action was in ejectment by the heirs of the wife, and the validity of the sheriff's deed was denied. The court held that the irregularities which were alleged to exist in the proceedings—one of them being the failure to make the heirs of the wife parties—were not of such a character as to render them liable to attack in a collateral proceeding. But it was also held that the interest of the heirs of the wife was not included in the sale nor in the deed, and, as the estate by the curtesy had determined by the death of the husband, the remainder —upon which the action was based—had become an estate in possession, and could be recovered. Judgment was accordingly given for the plaintiffs. This is in harmony with the decision in Foster v. Dennison, 9 Ohio, 121, that a husband, who is also one of the tenants in common, is competent to make partition of the wife's real estate, but that the right he or his grantee acquires by the proceeding does not extinguish her right, which survives to her or her heirs. It is claimed, however, that if the husband has the right to partition the wife's lands, the possession was vested in him, and that consequently the statute of limitations began to run against the plaintiffs as to the lands not partitioned to her, but to the other heirs, from the date of her death. This is ingenious, but not sound. The right of the heirs of the wife to assert their claim to possession of any portion of the lands inherited from her was subject to the estate by the curtesy. But for the partition,—conceding, for the sake of the argument, that it was made,—that estate would

have attached to the wife's undivided interest in all the lands. By reason of the partition it was fixed upon the lands set apart to him, with the result to free all the other lands in the hands of the co-tenants from that estate, and at the same time to protect them against any claim to possession by the heirs of the wife during its continuance. That is what is meant by the statement that the partition by the husband binds the inheritance. But it is unnecessary to pursue this subject further, for the evidence is not sufficient to support the finding that there was a partition.

The plaintiffs move also for a judgment non obstante veredicto. Were it not for the conclusion, above stated, that, even if a parol partition was made, it was invalid, for the reason that Margaret Ann Munford was under the disabilities of coverture, this motion would have to be overruled. But it results from that conclusion that it is immaterial whether there was or was not such a partition, and upon the other special findings of fact the right of the plaintiffs to recover is incontestable. Their actions were brought in 1877, less than two years after the death of John Sinclair terminated the estate by the curtesy.

The motion to set aside the general verdicts for the defendants and the special findings relating to a partition will be granted, and also the plaintiffs' motion for judgment.